IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 15, 2008

**STATE OF TENNESSEE v. JAMES PEEBLES**

**Direct Appeal from the Circuit Court for Rutherford County**
**No. F-59956     James K. Clayton, Jr., Judge**

---

**No. M2008-00240-CCA-R3-CD - Filed January 23, 2009**

---

The defendant, James D. Peebles, was convicted by a Rutherford County jury of one count of sale of a Schedule II drug, cocaine, under .5 grams (a Class C felony).  Following a sentencing hearing, he was sentenced, as a Range II offender, to a term of ten years in the Department of Correction.  On appeal, he raises the single issue of sufficiency of the evidence.  Following review of the record, we affirm the judgment of conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Gerald L. Melton, District Public Defender, and Russell N. Perkins, Assistant Public Defender, for the appellant, James Peebles.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and Trevor H. Lynch, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

In August 2006, Detective Phillip Loyd of the Murfreesboro Police Department's Narcotics Division contacted a professional confidential informant about engaging her services in his area. The informant, Rhonda Pleasant, had worked as a paid confidential informant for more than twenty years for various police departments around the country, and Detective Loyd had utilized her on previous occasions.  Ms. Pleasant, who had never been charged with any drug related crime, was paid $130 per buy that she conducted and received the payment regardless of whether an arrest or conviction was made as a result of the buy.

On August 31, 2006, Ms. Pleasant met with Detective Loyd at a secure location, and she was instructed to drive around the area of State and Sevier Streets to attempt to make drug purchases. There was no specific target identified; rather, she was to purchase drugs from any person she came into contact with who was willing to sell them to her. Prior to her being sent to the area, both her person and her car were searched, and she was given $30 with which to make a drug purchase. Her car was outfitted with a video camera and two audio devices. She was instructed to keep police informed of her exact location by calling out street names, stops, and turns, which would all be monitored by police through the audio equipment.

Once Ms. Pleasant was in the area, she came into contact with the defendant. She asked him if he was "working," and the defendant came to her car window and asked Ms. Pleasant what she wanted. During this exchange, the defendant is visible on the video tape. Ms. Pleasant informed the defendant that she wanted $30 worth of crack cocaine, and he instructed her to drive around the block and return to an area behind a nearby store. She did so, but there was a police vehicle behind the store when she returned, and the defendant informed her to "go on." Ms. Pleasant went around the block again and parked behind the store. As she was approaching the store, she witnessed the defendant give something to an older man, later identified as James McAdoo. After she parked, the defendant approached her car and instructed her to move the vehicle because she was in range of the surveillance cameras located behind the store. After doing so, the defendant again approached her vehicle and informed her that the other man had her drugs and would bring them to her.

Shortly thereafter, James McAdoo approached her car, handed her the drugs wrapped in paper, and took the $30. Ms. Pleasant then left the area. However, as she was driving off, she saw McAdoo give something to the defendant, which she assumed to be the money, although she could not specifically identify it. She then returned to the secure location where Detective Loyd was waiting. Once there, Ms. Pleasant gave Detective Loyd the drug, which field tested positive and were later identified by the TBI to be .1 grams of cocaine. Both Ms. Pleasant and her car were again searched, and Detective Loyd debriefed Ms. Pleasant as to the details of the transaction. After viewing the video tape, a second detective identified the defendant, who was arrested at a later date.

The defendant was indicted by a Rutherford County grand jury for one count of sale under .5 grams of a Schedule II drug, cocaine. Following a jury trial, the defendant was convicted as charged, and he was subsequently sentenced, as a Range II offender, to a term of ten years in the Department of Correction. Following the denial of his motion for new trial, the instant timely appeal was filed.

**Analysis**

On appeal, the defendant asserts that the evidence is insufficient as a matter of law to support his conviction. In considering this issue, we apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.

Ct. 2781 (1979); *see also* Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court will not reweigh or reevaluate the evidence presented. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt so that, on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Although a conviction may be based entirely upon circumstantial evidence, *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1974), in such cases, the facts must be "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone." *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991) (citing *State v. Duncan*, 698 S.W.2d 63 (Tenn. 1985)). However, as in the case of direct evidence, the weight to be given circumstantial evidence and "the inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *Marable v. State*, 203 Tenn. 440, 313 S.W.2d 451, 457 (Tenn. 1958) (citations omitted).

Tennessee Code Annotated section 39-17-417(a)(3) (2006) provides that it is an offense for a person to knowingly sell a controlled substance. Cocaine is a Schedule II controlled substance. T.C.A. § 39-17-408 (2006).

The defendant asserts that the evidence does not establish beyond a reasonable doubt that he knowingly sold a controlled substance because the videotape "clearly shows that after the confidential informant contacted [the defendant], he directed her to another location and advised her when she arrived at the location that someone else . . . actually made the transaction with her, taking the money and delivering the cocaine." He relies upon *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987) for support based upon the case's holding that "mere presence" in an area where drugs are found and "mere associations" with a person who controls the drugs are not sufficient to establish possession.

We agree with the defendant that the evidence presented establishes that the actual drug sale was done by James McAdoo. However, the defendant's argument ignores that he was convicted under a theory of criminal responsibility in this case. Tennessee Code Annotated section 39-11-402(2) (2006) provides that a defendant is criminally responsible for the conduct of another when, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the

proceeds or results of the offense, the defendant solicits, directs, aids, or attempts to aid another person to commit the offense[.]" A person is criminally responsible as a party to an offense, if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both. *Id.* at § 39-11-401(a) (2006). Each party to an offense may be charged with commission of the offense. *Id.* at § 39-11-401(b).

However, even under the theory of criminal responsibility for the acts of another, mere presence during the commission of the crime is not enough to convict. *State v. Ball*, 973 S.W.2d 288, 293 (Tenn. Crim. App. 1998). Nonetheless, under a theory of criminal responsibility, an individual's presence and companionship with the perpetrator of a felony before and after the commission of an offense are circumstances from which his or her participation in the crime may be inferred. *State v. Caldwell*, 80 S.W.3d 31, 38 (Tenn. Crim. App. 2002). To be criminally responsible for the acts of another, the defendant must "in some way associate himself with the venture, act with knowledge that an offense is to be committed, and share in the criminal intent of the principal in the first degree." *Id.* at 38 (citing *State v. Maxey*, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994)).

Viewing the evidence in the light most favorable to the State, we conclude that the evidence is more than sufficient to support the conviction. Although the defendant did not personally complete the hand-to-hand portion of the drug transaction, the record establishes he acted "with the intent to promote or assist the commission of the offense" based upon his active role in setting up and directing the transaction. Based upon the testimony of Ms. Pleasant, as well as the videotape admitted, it is clear that the defendant approached Ms. Pleasant's car and, in response to her question if he was working, asked her what she wanted. Upon her answer that she wanted $30 worth of cocaine, he directed her to drive around the block prior to going to a location behind a store. When she returned, he directed her to again circle the block based upon a police presence. When she returned, Ms. Pleasant saw the defendant give something to the man who eventually delivered the cocaine to her. Once she stopped her vehicle, the defendant again told her to move her car because she was in the range of surveillance cameras. The defendant also informed her that the other man had the cocaine. After moving her vehicle per the defendant's instructions, the transaction was completed. Importantly, no discussion was had between the defendant and McAdoo with regard to how much cocaine she wanted to purchase. He simply handed her the package and took the $30. Based upon these acts, the defendant clearly associated himself with the crime, acted with the knowledge that it was to be committed, and shared in the criminal intent. Thus, the evidence presented is sufficient to support the verdict.

## CONCLUSION

After a thorough review of the record, the judgment of conviction is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE